UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Case No. 5:21-CR-15 |
| | : | |
| **ABDALLAH AMER ALI** | | |

SENTENCING MEMORANDUM

The United States respectfully submits that a sentence of 180 months is appropriate for Abdallah Ali. That sentence is well above the applicable Guideline range, but it is nonetheless appropriate given the overdose death that resulted from his conduct and the potential sanction Mr. Ali was facing had he gone to trial.

BACKGROUND

As described in the Pre-Sentence Investigation Report ("PSR," Dkt. No. 58), Mr. Ali was a drug dealer, routinely selling (among other things) faux Percocet pills (or "percs") that contained fentanyl. *See* PSR ¶¶ 3-13.

During the evening of October 22, 2019, Mr. Ali sold A.R. a perc. A.R. returned home with the pill, and told Mr. Ali that he (A.R.) was going to take the whole thing. Mr. Ali advised against it, but A.R. took the pill. A.R. was found dead the next morning; he died of acute fentanyl toxicity. *See id.* ¶ 4-5; Ex. 1.[1]

---

[1] Ex. 1 shows the Snapchat conversation between Mr. Ali and A.R. on October 22, 2019. The exchange was acquired during a forensic examination of A.R.'s phone.

In the months following the drug sale that resulted in A.R.'s death, law enforcement carried out seven controlled purchases with Mr. Ali. In each instance, the various confidential informants arranged to buy pills from Mr. Ali, and in each instance the pills contained fentanyl. *See* PSR ¶ 6-43.

On June 2, 2022, Mr. Ali pleaded guilty to distributing fentanyl in violation of 21 U.S.C. § 841(a)(1). Dkt. Nos. 48, 51-52.

## DISCUSSION

As a general rule, district courts are obligated to perform the following four steps in sentencing defendants: (1) properly calculate the sentencing range recommended by the advisory Guidelines; (2) determine whether a sentence within that range and within statutory limits serves the factors set forth in § 3553(a) and if it does not, select a sentence that does serve those factors; (3) implement any applicable mandatory statutory limitations; and (4) articulate on the record the reasons for selecting the particular sentence and especially, if applicable, explain why a sentence outside of the Sentencing Guidelines range better serves the relevant sentencing purposes set forth in § 3553(a) than one within it. *United States v. Green*, 436 F.3d 449, 456 (4th Cir. 2006); *United States v. Booker*, 543 U.S. 220, 260-65 (2005); 18 U.S.C. § 3553(a).

**1. The Defendant's Advisory Guideline Range**

The initial PSR was prepared on October 3, 2022. Dkt. No. 58. The government has no objections to the report and agrees that it properly calculates Mr. Ali's Guideline range as 10-15 months (with a maximum term of 240 months) based on a

total offense level of 10 (given a drug-weight base-offense level of 12, and two-point reduction for acceptance of responsibility) and a criminal history category of III. PSR ¶¶ 17-26, 36, 53-54.

**2. The Court Should Accept the Plea Agreement**

Given the nature of the plea agreement and the offense actually pleaded to in this case, there is a sizeable disparity between Mr. Ali's 10-15-month Guideline range and the parties' 144-180-month Rule 11(c)(1)(C) range. However, there are justifiable reasons for that disparity, and the Court should therefore accept the plea agreement and impose a sentence between 144-180 months. *See* U.S.S.G. § 6B1.2(c).

Mr. Ali is not simply a low-level drug dealer of relatively paltry drug weights; he is responsible for A.R.'s death. *See* PSR ¶ 4-5. That alone warrants a severe sanction and something far above the Guideline calculus for dispensing a few grams of a controlled substance. Indeed, Mr. Ali's crime is a cautionary tale of the enormous risks surrounding fentanyl and its use or distribution even in small quantities. As the PSR notes, Mr. Ali would have faced a Guideline range of 292-365 months (and a mandatory 20-year minimum sentence) had he proceeded to trial and been convicted. *Id.* ¶ 55. The parties agreed-to 144-180-month range therefore represents an appropriate compromise that ensures a punishment more in line with the severity of Mr. Ali's crime.

At the same time, the parties' stipulated range also represents a modest reduction from the top end of the Guidelines and the mandatory minimum that would have applied had Mr. Ali been convicted—which the government maintains is appropriate in lights of Mr. Ali's history and characteristics. Mr. Ali was not the head

of a large drug-distribution hierarchy, nor was he a large-scale dealer bringing in kilos of drugs to the greater Harrisonburg area. He was dealing in relatively small weights, selling to users and addicts rather than next-line distributors who would push the drugs further into the community. In addition, Mr. Ali is relatively young—only 21 years old—and the stipulated range ensures that there will be a life after jail—that is, that he will have an opportunity after his incarceration to recalibrate the direction of his life and direct his efforts toward more productive ends. Finally, his criminal history is relatively modest and largely devoid of violent crime or firearm-related offenses—which also militates against the necessity of imposing a hefty, multi-decade sentence.

In short, the combination of those factors justifies a sentence within the parties stipulated Rule 11(c)(1)(C) range, and the Court should therefore accept the plea agreement.

### 3. A Sentence of 180 Months is Appropriate

Within the parties' stipulated range, the government submits that a sentence at the top end of 180 months is appropriate, in recognition of the relevant factors under 18 U.S.C. § 3553(a). Simply put, it amounts to an appropriately severe sanction given the severity of the offense.

With regard to the nature of the offense, Mr. Ali was selling pressed-fentanyl pills or "percs," and ultimately provided some to the victim here, A.R. Selling drugs is problematic, selling fentanyl is even worse (given the increased potential for overdoses and serious injury), and selling drugs that kill a high-school teenager is enormously serious. That conduct warrants a severe, multi-year sanction.

The government recognizes that Mr. Ali did not intend to kill A.R., and so his conduct is distinct from that of a traditional intentional homicide. But Mr. Ali willingly engaged in inherently dangerous conduct that put lives at risk. The evidence suggests he likely knew his wares contained fentanyl, even if they weren't advertised as such—e.g., *every* controlled purchase acquired pills that tested positive solely for fentanyl and no other controlled substance; and Mr. Ali himself was using "percs" that tested positive for fentanyl. In fact, Mr. Ali advised A.R. not to take the whole pill, suggesting he recognized the danger of such a decision. *See* Ex. 1. And during one of the controlled purchases, he explicitly described to the confidential informant the risks of buying and taking these drugs—saying sometimes users get a "bad one" or a "hot spot one" that kills them. *See* Ex. 2.[2] But notwithstanding these risks, Mr. Ali continued selling pills with fentanyl, more interested in his own financial well-being than the potentially fatal consequences to his buyers.

Those considerations—together with the need to reflect the seriousness of the offense, deter future criminal conduct, and protect the public from those like Mr. Ali who risk the lives of the public for their own personal profit—justify a heavy sanction and a sentence at the top-end of the stipulated range here.

On the other hand, Mr. Ali's history and characteristics—although mitigating in some respects—do not favor a sentence toward the lower end of the stipulated range;  as described above, those considerations are already incorporated into the

---

[2] Exhibit 2 is transcript prepared from the audio of the controlled purchase on February 18, 2020.

5

justification for the parties' stipulation to a range below the otherwise applicable (i.e., had he gone to trial) Guideline range and mandatory minimum. Mr. Ali's criminal history is not so egregious as to warrant multiple decades in prison as a result of this offense; but it also does not reveal a past model citizenry. He has multiple drug-related offenses (including both possession, possession-with-intent-to-distribute, and distribution convictions) along with various driving offenses. And while there is no history of assault, robbery, or gun crimes, there is one potentially violent offense—Mr. Ali was assaulted by another individual and, seemingly in response, confronted the individual and ended up smashing a vehicle (not a person) with a weight bar and a box cutter.

\* \* \*

At bottom, harmonizing and balancing the relevant considerations in this case, the government submits that a sentence of 180 months is suitable here and appropriately accounts for the severity and seriousness of Mr. Ali's conduct. It is sufficient to afford adequate deterrence and promote respect for the law while ensuring a just punishment for Mr. Ali's drug distribution activity and the overdose death that resulted.

Respectfully submitted,

CHRISTOPHER R. KAVANAUGH
United States Attorney

<u>s/ Jonathan Jones</u>

Jonathan Jones
Andrew Bassford
United States Attorney's Office

                                        310 1st Street SW, Suite 906
                                        Roanoke, VA 24011
                                        (540) 857-2250
                                        jonathan.jones2@usdoj.gov
                                        andrew.bassford@usdoj.gov

## **CERTIFICATE OF SERVICE**

      I hereby certify that on November 1, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

                                        s/ Jonathan Jones
                                        Assistant United States Attorney